IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

FILED
JUL 0 6 2009
CLIFFORD J. PROUD
U.S. MAGISTRATE JUDGE
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CASE NUMBER 09-M-6059-CJP |
| ) | |
| WILLIAM BERRY, ) | Title 18, |
| DERRICK COURTLAND, ) | United States Code, |
| JOHN BACON, ) | Section 371 |
| JULIUS JACKSON, and ) | |
| JOSEPH ADDISON, ) | |
| Defendants. ) | **FILED UNDER SEAL** |

## CRIMINAL COMPLAINT

I, Carole A. Schmitt, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief:

### CONSPIRACY TO COMMIT UNLAWFUL ACTIVITIES OF DOG FIGHTING

### COUNT 1

From on or about November 18, 2008, and continuing through at least April 18, 2009, in St. Clair and Madison County and elsewhere, within the Southern District of Illinois,

**WILLIAM BERRY,
DERRICK COURTLAND,
JOHN BACON,
JULIUS JACKSON, and
JOSEPH ADDISON,**

defendants herein, did knowingly and willfully combine, conspire, confederate and agree with each other persons known and unknown to commit the following offenses against the United States, to wit:

1

1. Knowingly sponsor, exhibit, handle an animal in an animal fighting venture where any animal in the venture has moved in interstate commerce, in violation of Title 7, United States Code, Section 2156(a)(1); and

2. Knowingly transport, deliver, and receive for purposes of transportation, in interstate commerce, any dog for purposes of having the dog participate in an animal fighting venture, in violation of Title 7, United States Code, Section 2156(b).

## MANNER AND MEANS OF THE CONSPIRACY

3. It was part of the conspiracy that the defendants and their co-conspirators did develop parcels of property for housing, training, and staging pit bulls involved in animal fighting.

4. It was also part of the conspiracy that the defendants and their co-conspirators did promote, sponsor, and exhibit dogs in animal fighting competitions in interstate commerce involving dogs that were moved across state lines.

5. As part of the conspiracy, the defendants and their co-conspirators did provide funding for expenses associated with the ongoing animal fighting venture, including training materials, dog food, medicine, travel expenses, and purse fees for dog fighting competitions.

6. As part of the conspiracy, the defendants and their co-conspirators engaged in "rolls," informal fights between pit bulls done for determining the dogs' propensity for fighting.

## OVERT ACTS

7. On or about November 15, 2008, behind a residence at 2210 North 50th Street, Washington Park, Illinois, **WILLIAM BERRY**, promoted and arranged for the location of two dog fights. **WILLIAM BERRY** charted twenty dollars per person to enter, watch, and participate in the dog fights. Approximately forty people attended the dog fights that night.

8.      On or about November 15, 2008, the first dog fight involved a dog who traveled interstate commerce to compete in the fight.

9.      On or about November 15, 2008, in the second dog fight of the evening, **WILLIAM BERRY** owned and handled his male pit bull named Black. **JOSEPH ADDISON** refereed this dog fight. **JOHN BACON** attended this fight as a spectator.

10.     On or about April 18, 2009, at 10 Lakewood Place East St. Louis, Illinois, four "rolls," dog fighting for schooling purposes, and two contract pit bull fights occurred.

11.     The second roll was fought between a pit bull owned by **JOHN BACON** and another. **JOHN BACON** handled his dog within the fighting pit.

12.     The third roll was fought between a pit bull owned by **JOSEPH ADDISON** and another. **JOSEPH ADDISON** handled his dog within the fighting pit.

13.     The fourth roll was fought between a pit bull owned by **JOHN BACON** and a pit bull owned by **JULIUS JACKSON**. **JOHN BACON** and **JULIUS JACKSON** handled their own dogs withing the fighting pit.

14.     The first contract pit bull dog fight occurred between a pit bull owned and handled by **DERRICK COURTLAND** and another.

All in violation of Title 18 United States Code Section 371.

# AFFIDAVIT

I, Carole Schmitt, being duly sworn, state the following:

## INTRODUCTION

1.  I am a Special Agent with the Office of Inspector General, United States Department of Agriculture (USDA). I have been so employed for approximately 28 years. I am responsible for conducting criminal investigations pertaining to fraud, waste, and abuse in programs administered by the USDA, and for the enforcement of the Animal Welfare Act, whose prohibitions are presented in 7 U.S.C. 2156. I have conducted numerous investigations during my tenure regarding allegations of fraud in different USDA programs.

2.  The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officer and agents, review of public, commercial, and law enforcement records and reports. I have not included each and every fact known to me concerning the investigation. I have set forth only those facts believed necessary to establish probable cause to believe that federal criminal violations of the below mentioned statutes exists.

## BACKGROUND

3.  Dogfighting is an illegal sport in which fighting dogs, a breed of dog that has been bred for aggression toward other dog,) and, in the United States, are almost always American pit bull terriers. These dogs are released from constraint by their handlers to attack each other and fight. The fight ends when one dog withdraws or displays signs of submission. There are different types of dogfights that will be explained later in this affidavit.

4

4. "The puppies that result from dog fighters breeding programs are most often subjected to an intensive culling process that involves keeping only those puppies who exhibit aggressive behavior. Dogs who survive their first sixteen to eighteen months become fighting prospects and are schooled. The dog fighter will pit the prospect animal in a series of events referred to as short "rolls". Rolls are fights between two dogs that are used by dog fighters as a means of building confidence and exposing their prospect fighting dog to a variety of fighting styles. Normally, bets are not wagered for "roll" fights. Roll fights are looked upon by dog fighters as a way of testing younger fighting prospects to determine whether they have "game". A prospect fighting dog is considered to have "game" if it engages the other animal in a fight and continues to engage in fighting behavior even if the two animals are broken apart after getting hot and tired, restrained, and then allowed to engage each other again. The more aggression a prospect shows toward the other animal in the roll, the more "game" the prospect fighting dog is believed to have. Roll fights normally do not last as long as match fights.

5. Contract fights are dog fights which occur between dogs who have shown "game." Contracts are usually verbal and often occur over the telephone. Contracts require that each dog owner post a sum of money to be used as a match bet. The first half of the match bet is given to or mailed to the promoter of the fight. When the dog fighters arrive at the fight location, a location which is often guarded as a secret until a short time before the fights are supposed to begin, they provide the second half of the match bet normally to the promoter or referee if the promoter is not at the fight. If the promoter is not at the fight, he/she made arrangements to have the forfeit money delivered to the fight. The promoter of the fight was the individual that made all the arrangements necessary to conduct the match fight(s). He/she typically controls the fight location. The promoter

5

is responsible for arranging and securing the bet forfeits. The dog owner and/or handler agree on the referee. Fight facilitator(s) are the individuals that offer the dog fighters involved, a location for the illegal activity to occur. In rural areas farm outbuildings are often used for dog fighting matches. In urban city settings, illegal dog fighting matches often occur in basements of residence dwellings.

6. The facilitator(s) are mostly dog fighters themselves, and may or may not have an animal involved in a match fight occurring on that occasion for the fight(s) they are facilitating. Most often the facilitator(s) have the paraphernalia equipment on hand necessary for fights to occur. A dog fighting pit/box is constructed which consists of four walls 16' x 16' usually constructed of wood materials and a rug to line the bottom of the pit/box. The facilitator(s) supply weighing scales, dog washing equipment, break sticks, and any other equipment needed for the fight(s).

7. The referee is the individual who officiates in the pit during a match who is well versed in the various rules under which the fight is to take place. The referee of a dog fight is usually someone whose name is well established within dog fighting circles and someone that dog fighters trust to officiate the fight fairly according to the agreed upon rules of the fight. For "match" fights there will always be a set of rules and a common set of rules used by dog fighters is called "Cajun Rules". The handler of each dog could be the owner of the dog and other times a trusted associate of the owner. Prior to match fights beginning, the rules are agreed upon by the owners/handlers of the dogs and the referee will enforce those rules.

8. A "match" fight occurs in the pit/box surrounded by spectators. A timekeeper is designated at match dog fights. A sponge person is designated or the referee provides the handlers wet sponges during breaks in the fighting to wash the animals down to cool them off, and wipe off blood from wounds.

9.     The spectators who attend these dog fights and are usually motivated to attend for different reasons. The majority of spectators are usually dog fighters or relatives or associates of dog fighters. They may attend to participate in the gambling that occurs at match fights or just to be entertained from the fight(s). Spectators often make side bets with other spectators or participants in the fight events, such as owners, handlers, promoters, and facilitators.

10.    The two dogs fight until a turn (dog turns his head and shoulders to avoid fighting) is called on one of the dogs or one of the handlers terminates the dog fight. During match dog fights and based on the rules of the fight, the dogs can be broken apart from each other with devices called "break sticks". "Break sticks" are only used if one of the dogs are fanged. Match fights can last anywhere from a few minutes to several hours. The referee of match fight(s) declares the winner.

11.    Your affiant has learned that it is typical for pit bull dog fighting "promoters", "facilitators", "handlers", "referees", and "serious fighters" to regularly communicate with each other concerning issues to include: the scheduling and location for upcoming dog fights, the identity of prospective participating dogs, the past won/loss records of said dogs, details about gambling and "forfeit" monies, dog breeding, dog sales, dog kennel developments, etc. these individuals typically and commonly communicate via mobile and cellular phones, the United States postal system, for mailing bet/forfeit money, through the internet, electronic mail, datafax machines, magazines, and publications, etc. It is common for such individuals to photograph and video type dog fight matches for personal records or commercial sales.

**FACTS OF THIS CASE**

12.    On November 15, 2008, Berry promoted and facilitated another dog fighting event in the garage behind the house at 2210 N. 50th Street, Washington Park, Illinois. Berry charged most

7

everyone a $20 entry fee to enter the garage and attend the dog fighting events. There were approximately 40 people in that garage at one time during the event. Berry handled and fought his dog "Black" in the match fight. Joseph Addison, co-owner of Back Street Truez kennel, was the referee of that fight. Berry had not provided his $2,000 forfeit money to the referee before the fight and when his dog lost he picked up his dog and left the location driving a 1994 Chevrolet pickup truck registered to him. Berry had told one of the dog fighters that he was going back to "the spot". Several dog fighters who had attended the event went to "the spot" which was 1522 N. 52nd Street, Washington Park, Illinois.

13.     On March 31, 2009, during a surveillance of 1522 N. 52nd Street, Washington Park, Illinois, UCO's observed several dog houses and dog crates in the back yard area of that residence. During surveillance of 1522 N. 52nd Street, Washington Park, Illinois on June 25, 2009, at least one dog was heard barking and believed to be secured on a heavy chain.

14.     On April 18, 2009 a large dog fighting event occurred at, 10 Lakewood Place, East St. Louis, Illinois. Four "roll" dog fights and two match dog fights occurred that night in the horse barn. There were thirty people that attended the event and each of those people had various roles regarding the dog fights. Most of the attendees were dog fighters and were suspects in the investigation described herein, including suspects that reside in the Southern District of Illinois, but also participants from the Eastern District of Missouri and the Western District of Missouri. That event was originally planned because of a match fight scheduled between a pit bull fighting dog owned by Derrick L. Courtland, Cahokia, Illinois and a pit bull fighting dog owned by a dog fighter from Leslie, Missouri.

15.   On April 18, 2009, law enforcement learned that one person owned that property, the equipment on the property, the horses, and some of the pit bull fighting dogs being kept on the property. The other pit bull fighting dogs being kept there belonged to John W. Bacon, a/k/a "Dump", Fairview Heights, Illinois and one of the co-owner Back Street Truez kennel. The first four dog fights were "roll" fights. Courtland, the promoter of the event, fought a dog in the first roll. Bacon fought one of his pit bull fighting dogs in the second roll. Joseph Addison, co-owner Back Street Truez kennel, fought a dog in the third roll fight. The fourth roll fight was between a dog owned by Bacon and a dog owned by Julius G. Jackson, East St. Louis, IL, co-owner of Back Street Truez kennel. The fifth fight was the originally promoted match fight between Courtland and a dog fighter from Leslie, Missouri. Courtland's dog was declared the winner of that fight by the referee. Bets were wagered on that fight.

FURTHER AFFIANT SAYETH NAUGHT.

*[signature]*
Carole Schmitt
Office of Inspector General, United States Department of Agriculture (USDA)

State of Illinois      )
                       )   SS.
County of St. Clair    )

Sworn to before me and subscribed in my presence on the 6th day of July, 2009, at East St. Louis, Illinois.

*[signature]*
Clifford J. Proud
United States Magistrate Judge

A. COURTNEY COX
United States Attorney

*[signature]*
Jennifer Hudson
Assistant United States Attorney

10